UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

JASON MARCO MORALES
   a/k/a Jason Mantis

CASE NO. 6:26-cr-39-JA-LHP
18 U.S.C. § 1344
(Bank Fraud)

## INDICTMENT

The Grand Jury charges:

### COUNTS ONE THROUGH SIX
(Bank Fraud - 18 U.S.C. § 1344)

#### A. Introduction

At times material to this Indictment:

1. Mortgage Company 1 was a financial institution as defined by the Fraud Enforcement and Recovery Act of 2009, that is, an organization that financed and refinanced debt secured by an interest in real estate and with activities that affected interstate and foreign commerce.

2. It was the practice of many lending institutions, including Mortgage Company 1, to make loans secured by real property to borrowers or to refinance existing loans secured by real property. Such loans were typically called mortgages or mortgage loans. In determining whether to extend any such loan, it was the practice of Mortgage Company 1 to rely upon the information contained in a borrower's mortgage-related documents, such as Form 1003, Uniform Residential Loan Application (referred to herein as the "loan application"), documents submitted in

support of the statements made on the loan application, the Closing Disclosure, and the mortgage itself.

3. The loan application and supporting documentation were relied on by mortgage lenders in the mortgage loan approval process. The loan application required the borrower to truthfully provide the mortgage lender with various types of information, including the borrower's place of employment, gross monthly income, source of closing costs and down payment, intended use of the property (such as investment or secondary residence), and the specific details of the anticipated real estate transaction.

4. When Mortgage Company 1 received a loan application, this typically triggered what was known in the mortgage industry as the "underwriting process." The primary purpose of the underwriting process was to determine the ability of the borrower to repay the mortgage loan being requested. During the underwriting process, Mortgage Company 1 and other mortgage lenders considered a variety of factors in determining whether to issue a mortgage loan, including the borrower's employment, length of employment, sources of income, assets, and liabilities. Mortgage Company 1 considered the amount and source of a borrower's gross income and length of employment to be important factors in assessing the borrower's financial health and determining the borrower's ability to repay the mortgage loan.

5. A Verification of Employment (hereinafter "VOE") was a form used by Mortgage Company 1 and other lenders to verify the employer, length of employment, and salary information of a borrower seeking a mortgage loan.

6. A Verbal Verification of Employment ("Verbal VOE") was a process where a lender, such as a Mortgage Company 1, directly called a borrower's employer to verbally confirm their employment status, length of employment, and job stability.

7. Construction Company 1 was a Florida limited liability company.

8. Consulting Company 1 was a Florida limited liability company.

9. Defendant **JASON MARCO MORALES**, a/k/a Jason Mantis, (hereinafter: "**MORALES**") was a mortgage loan officer, licensed by the Florida Office of Financial Regulation ("FL OFR").

10. JMGROUP FINANCIAL, LLC (JMGROUP") was a Florida limited liability company organized and managed by **MORALES**. JMGROUP was licensed and regulated by the FL OFR.

### B. The Scheme to Defraud

11. Beginning at least as early as in or about May 2021, and continuing through at least in or about January 2023, in the Middle District of Florida, and elsewhere, the defendant,

**JASON MARCO MORALES**,
a/k/a Jason Mantis,

and others, both known and unknown to the Grand Jury, did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud financial institutions, as defined in 18 U.S.C. § 20, and to obtain money, funds, credits, assets, and other property owned by, and under the custody and control of a financial

institution, by means of materially false and fraudulent pretenses, representations, and promises.

### C. Manner and Means of the Scheme and Artifice

12. The manner and means by which **MORALES** and others sought to accomplish the scheme and artifice included, among other things, the following:

    a. It was part of the scheme and artifice to defraud that **MORALES** would and did receive contacts from buyers seeking to obtain mortgage loans to finance the purchase of residential real estate.

    b. It was further part of the scheme and artifice to defraud that **MORALES** would and did obtain legitimate employment, income, and asset information and supporting documentation from the buyers seeking to obtain mortgages.

    c. It was further part of the scheme and artifice to defraud that **MORALES** would and did disregard the legitimate employment, income, and asset information submitted by the buyers when completing their mortgage loan applications.

    d. It was further part of the scheme and artifice to defraud that **MORALES** would and did list false and materially fraudulent income and employment information on the mortgage loan applications stating that the buyers were employed by Construction Company 1 or Consulting Company 1.

4

e.  It was further part of the scheme and artifice to defraud that **MORALES** would and did list vastly overinflated bank account balances on the loan applications.

f.  It was further part of the scheme and artifice to defraud that **MORALES** would and did submit the buyers' loan applications containing the materially false statements to Mortgage Company 1.

g.  It was further part of the scheme and artifice to defraud that **MORALES** would and did create and cause to be created false and fictitious pay stubs and other documents for the buyers in the names of Construction Company 1 and Consulting Company 1 using the buyers' means of identification.

h.  It was further part of the scheme and artifice to defraud that **MORALES** would and did alter and cause to be altered the buyers' bank statements to show vastly inflated account balances to deceive Mortgage Company 1 into believing that the buyers had sufficient assets to qualify for mortgage loans.

i.  It was further part of the scheme and artifice to defraud that **MORALES** would and did submit and cause to be submitted the false and fictitious paystubs, altered bank statements, and other documents in support of the fraudulent loan applications, which would and did result in Mortgage Company 1 issuing funds for the benefit of the buyers for the purchase of the properties.

  j. It was further part of the scheme and artifice to defraud that **MORALES** would and did create websites for Construction Company 1 and Consulting Company 1 listing contact phone numbers registered to him.

  k. It was further part of the scheme and artifice to defraud that **MORALES** would and did answer verbal VOE calls at the telephone numbers registered to him from representatives of Mortgage Company 1 seeking to verify buyers' employment information at Construction Company 1 or Consulting Company 1.

  l. It was further part of the scheme and artifice to defraud that **MORALES** would and did verbally impersonate the alleged owners and employees of Construction Company 1 and Consulting Company 1 when falsely verifying the buyers' purported employment, length of employment, and employment stability to representatives of Mortgage Company 1.

  m. It was further part of the scheme and artifice to defraud that **MORALES** would and did obtain commissions for each mortgage loan that Mortgage Company 1 funded for these buyers.

  n. It was further part of the scheme and artifice to defraud that **MORALES** and others would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the object and purposes of the scheme and artifice to defraud and the acts committed in furtherance thereof.

## D. Execution of the Scheme

13. On or about the dates set forth below in each Count, in the Middle District of Florida, and elsewhere, the defendant,

**JASON MARCO MORALES,**
a/k/a Jason Mantis,

aided and abetted by others, and for the purpose of knowingly, willfully, and with intent to defraud executing, and attempting to execute, the aforementioned scheme and artifice to defraud Mortgage Company 1, a financial institution as defined in 18 U.S.C. § 20, and to obtain money, funds, credits, assets, and other property owned by and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations, and promises, did cause the following transfers of mortgage loan funds to be made by Mortgage Company 1:

| Count | Loan Closing Date | Approximate Loan Amount | Property |
|---|---|---|---|
| ONE | 8-13-2021 | $414,000 | 1xx9 Willa Lake Circle Oviedo, FL 32765 |
| TWO | 8-17-2021 | $320,000 | 3xx1 Hawthorne Lane Winter Park, FL 32792 |
| THREE | 11-15-2021 | $347,985 | 1xx8 Hillcrest Court Eustis, FL 32726 |
| FOUR | 4-29-2022 | $470,250 | 3xx Goosecreek Drive Winter Springs, FL 32708 |
| FIVE | 8-29-2022 | $240,562 | 1xx1 Gattis Drive Orlando, FL 32825 |
| SIX | 12-16-2022 | $331,500 | 1xx71 SW 52nd Lane Rd. Ocala, FL 34481 |

All in violation of 18 U.S.C. §§ 1344 and 2.

## FORFEITURE

1.  The allegations contained in Counts One through Six of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(2)(A).

2.  Upon conviction of violations of 18 U.S.C. § 1344, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation.

3.  The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of approximately $230,462.60, which represents the proceeds the defendant obtained from the offenses.

4.  If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty,

8

The United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL,



GREGORY W. KEHOE
United States Attorney

By: _____
Christopher Poor
Special Assistant United States Attorney

By: _____
Chauncey Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

13

FORM OBD-34
February 26

No. _____

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Orlando Division

THE UNITED STATES OF AMERICA

vs.

JASON MARCO MORALES
a/k/a Jason Mantis

INDICTMENT

Violations: 18 U.S.C. § 1344

A tr[redacted]

Filed in open court this 18th day

of February, 2026.

_____
                    Clerk

Bail $ _____

GPO 863 525